In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-24-00131-CV

_____

BANK OF AMERICA, N.A., Appellant

V.

KAREN A. BRUNNER, JOHN AND JANE DOES NOS. 1 THROUGH 25, AS
THE UNKNOWN DESCENDANTS OF RONALD A. BRUNNER,
DECEASED, ANY DISTRIBUTEES OF AN UNSATISFIED SPECIFIC
BEQUEST DUE FROM THE ESTATE OF JOEL T. BRUNNER, AND ALL
OTHERS CLAIMING BY, THROUGH OR UNDER
JOHN AND JANE DOES NOS. 1 THROUGH 25, Appellees

On Appeal from County Court at Law No. 6
Montgomery County, Texas
Trial Cause No. 23-33376

**MEMORANDUM OPINION**

Bank of America, N.A. ("Bank of America") challenges the denial of its

interpleader petition involving funds in a checking account (the "Disputed Funds")

of decedent, Joel T. Brunner ("Joel"). Joel's widow, Karen A. Brunner ("Karen")

1

opposed the interpleading of the funds and filed a counterclaim[1] under the Uniform Declaratory Judgments Act to establish herself as the rightful owner to the Disputed Funds in the account. The trial court denied Bank of America's interpleader and granted Karen's declaratory judgment motion for summary judgment and awarded attorneys' fees.

We hold that Bank of America was reasonable to anticipate rival claims, and the trial court abused its discretion when it denied Bank of America's interpleader. As a result, we reverse the Final Judgment denying the Interpleader and granting Karen's motion for summary judgment on her declaratory judgment claim and award of attorneys' fees. We remand to the trial court for an Order granting the interpleader, ordering the Disputed Funds be deposited into the registry of the court, discharging Bank of America from the suit, and dismissing with prejudice Karen's counterclaim against Bank of America under the Uniform Declaratory Judgments Act.

**Background**

In August 2023, Bank of America filed its Original Petition in Interpleader pursuant to Rule 43 against Karen A. Brunner and John and Jane Does Nos. 1 through 25, as the unknown descendants of Ronald A. Brunner, Deceased, ("Ronald

---

[1]Throughout the record, Karen uses the term counterclaim and cross claim interchangeably in reference to her claim under the Uniform Declaratory Judgments Act. Unless otherwise noted in the title of a document, we will refer to Karen's claim under the Uniform Declaratory Judgments Act as a counterclaim.

A. Brunner" or "Ronald") any distributees of an unsatisfied specific bequest due from the Estate of Joel T. Brunner, and all others claiming by, through, or under John and Jane Does Nos. 1 through 25. *See* Tex. R. Civ. P. 43. The property at issue is money deposited into a checking account, in the name of Joel T. Brunner, ending in 9263 that totals $19,250.35 ("Disputed Funds").

In the petition, Bank of America stated that Joel died leaving a valid Last Will and Testament dated August 17, 1994 and made the following bequests:

a. $5,000.00 to Joel's brother, Ronald A. Brunner;

b. $1,000.00 to Joel's sister, Bambi Pesce;

c. $1,000.00 to Joel's nephew, Walter H. Peters, III;

d. $1,000.00 to Joel's niece, Heather L. Maybee;

e. $1,000.00 to Joel's nephew, Roderick M. Maybee, IV;

f. $1,000.00 to Joel's niece, Rachel B. Pesce; and

g. $500.00 per month to Joel's mother, Ella May Townsend,[2] until either (1) the total distributed amount reaches $25,000.00 or (2) Ella May Townsend dies.

The Will further directs the remainder of the estate to pass to Joel's wife, Karen.

---

[2]Throughout the record, Ella May Townsend is also referred to as Ella Mae Townsend. For consistency, we will refer to her as Ella May Townsend in this opinion.

The petition stated that after Joel's passing, Karen applied to probate the Will as a Muniment of Title in March 2023, and an Order was issued admitting the Will as such. The Order authorized beneficiaries described in the Will to receive the assets without administration. It specifically stated that "the persons entitled to receive a particular asset be further entitled to deal with and treat the properties to which they are entitled in the same manner as if the record title were vested in their name." Per the Petition, Karen's counsel confirmed that specific bequests to Bambi Pesce, Walter H. Peters, III, Heather L. Maybee, Roderick M. Maybee, IV, and Rachel B. Pesce were satisfied. The petition also pointed to Joel's mother, Ella May Townsend, and his brother, Ronald A. Brunner, who both predeceased Joel. Karen further represented to Bank of America that Joel died without any children.

According to the petition, for distribution of the Disputed Funds, Bank of America proposed a distribution agreement that would provide assurances of Karen's representations; however, Karen rejected the proposal. Based on Karen's refusal, Bank of America anticipated rival claims to the Disputed Funds and sought interpleader relief. Additionally, Bank of America sought reasonable attorneys' fees and court costs associated with the cause of action.[3]

---

[3]At the request of Bank of America, the trial court appointed an Attorney Ad Litem to represent the remaining interpleader-defendants that are unknown but potential beneficiaries.

Karen filed her combined Answer; Cross Claim for Declaratory Judgment; and Motion for Traditional Summary Judgment. Karen generally denied all allegations and specifically denied that the proper owner of the Disputed Funds is unknown or that an interpleader of the funds is necessary. She also requested that Bank of America's request for attorneys' fees be denied.

In her filing, Karen brought a counterclaim for declaratory judgment asking the trial court to declare that she is the rightful owner of assets of Joel's estate. She specifically requested the following declarations:

a. that the bequest to Ella May Townsend in Joel's will terminated when Ella May Townsend predeceased Joel;

b. that the bequest to Ronald A. Brunner in Joel's will became part of the residuary of the estate of Joel pursuant to Texas Estates Code, sections 255.152(a) and 255.153(a);

c. that the residuary of Joel's estate passes to Karen; and

d. that the Disputed Funds titled in Joel's name belong to Karen. Karen also requested costs and reasonable and necessary attorneys' fees as allowed in section 37.009 of the Texas Civil Practice and Remedies Code.

Finally, Karen's combined filing included a Motion for Traditional Summary Judgment where Karen moved for summary judgment on Bank of America's interpleader claim and under the Uniform Declaratory Judgments Act. Karen argued

5

that she demonstrated the Disputed Funds did not need to be interplead as she has shown that all specific bequests that could be paid were paid, that Ella May Townsend and Ronald A. Brunner predeceased Joel, that the residuary of Joel's estate goes to her, and that the Disputed Funds belong to her as stated in the Muniment of Title order. Included as an exhibit is Karen's affidavit swearing to the same.

Karen later filed a First Supplement to Motion for Summary Judgment and a Second Supplement to Motion for Summary Judgment, which included affidavits from John Denton and Keith McAfee, respectively, in support of her summary judgment and declaratory judgment request. Denton and McAfee provided declarations that stated that Ronald predeceased Joel and left no children. Karen argued that this further proves that Joel's bequest to Ronald is part of the residuary left to Karen.

In September 2023, the attorney for the unknown heirs filed a Report of the Attorney Ad Litem and stated the following:

1. In my opinion there are no unknown heirs, minor heirs, incompetent heirs, or heirs with a legal disability.

2. I searched online and social media, including "my heritage" but I did not find any marriages or children of Ronald Brunner.

3. I filed my Answer on behalf of the unknown heirs, known heirs suffering legal disability, and known heirs whose whereabouts are unknown on August 23, 2023.

6

4. The obituary of Ronald Brunner does not mention any marriage or children. Social media does not reveal any relationships that could have resulted in a child.

5. The declarations under the penalty of perjury of John Denton and Keith McAfee who knew Ronald Brunner and his family for over 55 years also state that there are no children or marriages of Ronald Brunner.

Karen filed a Third Supplement to Motion for Summary Judgment and included the Report of the Attorney Ad Litem in support of her Motion and Declaratory Judgment request.

In response, Bank of America filed its Objection to the Court's Premature Consideration of Cross Action for Declaratory Judgment, Special Exception, Objections to Defendant's Summary Judgment Evidence, and Response to Defendant's Motion for Traditional Summary Judgment. Bank of America argued that it was premature for the trial court to consider Karen's counterclaim for declaratory judgment before the issue of the interpleader. Bank of America further specially excepted to the summary judgment motion as it did not expressly state the specific grounds for relief. According to Bank of America, Karen merely stated that an interpleader was not necessary as "there is no dispute or genuine issue of material fact about who the funds belong to."

Bank of America objected to the summary judgment evidence stating that Karen's affidavit contained legal and factual conclusions and subjective beliefs and

opinions. According to Bank of America, this is a substantive defect in the summary judgment evidence and improper evidence to support her claim. Bank of America further argued that the declarations of John Denton and Keith McAfee and the Report of the Attorney Ad Litem were all executed or completed post-filing and lack any evidentiary evidence relevant to the issue of interpleader relief.

Finally, in its response to Karen's Traditional Motion for Summary Judgment, Bank of America argued that Karen failed to disprove, as a matter of law, any essential element of the interpleader claim. According to Bank of America, it reasonably anticipated rival claims when it interpled due to the uncertainty of Ronald's bequest. As to this uncertainty, Bank of America noted that Karen failed to present evidence that Ronald had no descendants, and Karen refused to execute an assurance agreement. Additionally, Denton's and McAfee's supporting declarations and the Report of the Attorney Ad Litem were presented *after* the interpleader was filed. Bank of America contended that the Report of the Attorney Ad Litem established a reasonable anticipation of conflicting claims. Bank of America further argued that it timely filed its petition, did not delay, and tendered the Disputed Funds unconditionally to the court.

Bank of America included the following as exhibits: the affidavit of Tanya L. Randles, Group Operations Manager at Bank of America; Joel's account profile; Letter of Instruction and Account Closure Request; Joel's Last Will and Testament;

8

Order Admitting Will to Probate as Muniment of Title; correspondence between Karen, and counsels for Bank of America and Karen; affidavit of Cassandra Walsh, counsel for Bank of America; and Order Appointing Attorney Ad Litem.

Karen filed her Response to Plaintiff's Objection to Court Consideration of Motion for Summary Judgment; and Response to the Summary Judgment Evidence Objections; and Reply in Support of Motion for Summary Judgment. In her response, Karen noted that Bank of America did not object to the Court considering her summary judgment motion on the interpleader claim. She argued all filings are ripe for consideration, and considering both motions simultaneously is judicially efficient. According to Karen, the evidence shows there is no dispute about the ownership of the funds that required interpleading of the funds. Thus, she contended she is entitled to summary judgment on both the interpleader claim and the declaratory judgment claim.

Next, Karen argued Bank of America's fear of an unknown heir is unfounded, because there is no evidence of any persons owning or claiming ownership of the Disputed Funds. Karen stated that she has personal, factual knowledge that both individuals predeceased Joel, that her affidavit is admissible evidence, and Bank of America's objections to her affidavit should be overruled. Karen reiterated her position that Bank of America was unwilling to comply with the muniment order and transfer the funds to her, and certain statements in her affidavit are unnecessary,

9

though true. Karen then noted all the statements that were not objected to and were thus uncontested. Karen asserted that Denton's and McAfee's statements are relevant to the non-existence of rival claims, and Bank of America's objections should be overruled.

Finally, Karen argued that she has shown as a matter of law there are no rival claims, and there is no genuine issue of material fact of the funds' ownership. Karen asserted that she has proven the elements of her declaratory relief claims, and Bank of America is not entitled to interpleader. She argued that she demonstrated that Ella May Townsend's and Ronald's gifts lapsed when both predeceased Joel, and she has proven that she is the owner of the Disputed Funds.

Three days later, the trial court issued its Order on Bank of America's Objection to the Court's Premature Consideration of Defendant's Cross Action for Declaratory Judgment, Special Exception to Defendant's Motion for Traditional Summary Judgment, Objections to Defendant's Summary Judgment Evidence, and Defendant's Motion for Traditional Summary Judgment. The trial court sustained certain objections and overruled others. The trial court sustained Bank of America's objection that Karen's counterclaim and motion for summary judgment were premature. The trial court ruled, among other things, that "Defendant's Cross-Action for Declaratory Judgment, and any related motions for summary judgment on the

10

same action, will be reserved for consideration following a ruling on Bank of America, N.A.'s Original Petition in Interpleader."

On September 25, 2023, Karen filed another dispositive motion, her Motion for Traditional Summary Judgment on Bank of America's Interpleader. In the Motion, Karen argued that as a matter of law the $14,250.35 (Disputed Funds less Joel's $5,000.00 bequest to Ronald) belongs to her and should not be interpleaded. Karen asserted that she owns the remaining $5,000.00 as there are no rival claims anticipated, thus interpleader is unnecessary. According to Karen, she has demonstrated that the $14,250.35 is not subject to any rival claims, Bank of America has not identified any rival claims, and there is no reasonable doubt in law or fact as to the existence of any rival claims since Karen is the rightful owner of the funds. Karen again argued all specific bequests that could have been paid were paid except for bequests to Ella May Townsend and Ronald, since both predeceased Joel. According to Karen, the bequests either terminated or lapsed and became part of the residuary which passed to Karen under Joel's will.

She included the following exhibits: Karen's Affidavit, the Unsworn Declarations of John Denton and Keith McAfee, Report of the Attorney Ad Litem, Joel's Last Will and Testament, Order Admitting Will to Probate as Muniment of Title, and Application for Probate of Will as a Muniment of Title.

11

In October 2023, Bank of America filed its Objection to the Court's Premature Adjudication of Ownership of the Funds, Objections to Summary Judgment Evidence, and Response to Motions for Traditional Summary Judgment. Bank of America argued that before deciding who is entitled to ownership and possession of the funds, the trial court should decide the merits of Bank of America's Original Petition in Interpleader. Bank of America contended that the trial court previously sustained its objection to consideration of Karen's earlier filed Traditional Motion for Summary Judgment and declaratory judgment action as premature. It also asserted that Karen's most recently filed Motion for Traditional Summary Judgment is a reiteration of her first premature summary judgment and would inherently adjudicate her entitlement to the funds. Bank of America further objected to Karen's summary judgment evidence and argued that her affidavit, the unsworn declarations of John Denton and Keith McAfee, and Report of the Attorney Ad Litem were all created and offered *after* the interpleader petition was filed. Therefore, such evidence is precluded when used to retroactively clarify factual uncertainties that existed at the time of interpleading. Additionally, Bank of America objected to substantive evidence defects in Karen's affidavit as it contained legal and factual conclusions.

Bank of America responded to Karen's Motions for Traditional Summary Judgment on Interpleader. It argued that Karen failed to conclusively negate any

12

essential element of the interpleader claim since Bank of America reasonably anticipated rival claims at the time it filed the interpleader claim. According to Bank of America, at the time of filing, it faced conflict between Joel's Will and Karen's assertion that the Disputed Funds should be paid solely to her, and Bank of America is not required to demonstrate that such conflict actually developed into rival claims. Bank of America argued the mere anticipation is a sufficient basis for it to seek interpleader relief as it was uncertain if Ronald had any descendants, whether all bequests were satisfied, and the rejection of a distribution agreement. Bank of America also argued that it did not seek to segregate the Disputed Funds but to interplead them all.

Next, Bank of America argued that it is entitled to recover reasonable and necessary attorneys' fees, because it possessed the Disputed Funds as a disinterested stakeholder. Since an interpleading party is entitled to recover its fees unless it is personally responsible for the conflicting claims, Bank of America, as a depository institution, argued that it claimed no ownership to the Disputed Funds and played no part in any potential conflict.

Bank of America attached the following exhibits to its Response: Declaration of Tanya L. Randles; Joel's account profile; Letter of Instruction and Account Closure Request; Joel's Last Will and Testament; Order Admitting Will to Probate as Muniment of Title; Correspondence between Karen and counsels for Karen and

13

Bank of America; Declaration of Cassandra Walsh; and Order Appointing Attorney Ad Litem.

Karen then filed her Reply in Support of her Motion for Traditional Summary Judgment on Bank of America's Interpleader. In the Reply, she argued that her motion for summary judgment was not premature, that Bank of America had no dispute or reasonable doubt about the ownership of $14,250.35 of the Disputed Funds, and Bank of America is required to show rival claims exist as to the remaining $5,000.00 and reasonable doubt about which rival claim is valid. According to Karen, no rival claims exist, and she has shown through her summary judgment evidence that Bank of America is not facing rival claims. Karen further argued that regarding the $5,000.00 bequest to Ronald, she has negated rival claims, and there is no reasonable doubt whose claim is valid because there is only one claim.

Next, Karen argued that she has negated the essential element of reasonable doubt as to the validity of her claim because Bank of America has not shown a scintilla of evidence to create a genuine issue of material fact to show rival claims. According to Karen, Bank of America must show a reasonable doubt existed in law or fact as to which rival claims were valid. Karen also asserted that she established no rival claims exist and interpleading the Disputed Funds into the court's registry is unnecessary.

14

That same month, Bank of America filed its Motion to Take Judicial Notice of the Court's Own Records in this lawsuit, specifically, Joel's Last Will and Testament, Order Admitting Will to Probate as a Muniment of Title, Declarations of Tanya Randles dated August 16, 2023, and September 14, 2023, Joel's Account Profile, Bank of America's Deposit Agreement and Disclosures, Letter of Instruction and Account Closure Request, and Section III of Karen's Answer, Cross Claim for Declaratory Judgment, and Motion for Traditional Summary Judgment.

Bank of America then filed its Reply in Support of Relevancy Objection to Summary Judgment Evidence and again argued that Karen cannot use post filing evidence to dispute Bank of America's reasonably anticipated rival claims. It also asserted that her declaratory judgment claim judicially admits that an ownership question of the Disputed Funds existed. According to Bank of America, Karen's counterclaim for a declaratory judgment that she is the rightful owner of the Disputed Funds established the existence of reasonable doubt when Bank of America interpleaded, and she should not be allowed to contradict her judicial admission.

Bank of America further contended that it asked for documentation to resolve its doubts. Yet Karen does not dispute that she rejected executing a distribution agreement nor did she provide any evidence to support her claim to the Disputed Funds. Therefore, Karen's post-filing evidence is immaterial to whether Bank of America reasonably anticipated rival claims.

15

On October 19, 2023, the trial court held an evidentiary hearing on Bank of America's interpleader petition. At the hearing, Bank of America argued that neither Joel's Will nor the muniment order made it clear that Karen is entitled to the Disputed Funds. It argued that Karen's request that she be declared the rightful owner of the funds established that a question existed that the Court must resolve, and therefore interpleader was necessary.

Counsel for Karen argued that Bank of America has not established that interpleader is necessary because it failed to establish that it faced rival claims, and that there was a reasonable doubt in law or fact to which claim was valid. Counsel further argued that Joel's Will left the residuary of his estate to Karen and that Karen had no issues collecting from other institutions. When questioned, Karen informed Bank of America that all bequests that could be made, were made, and that Ella May Townsend and Ronald predeceased Joel, and Ronald had no children. As a result, there are no rival claims to Ronald's bequest of $5,000.00, nor has Bank of America alleged any.

The attorney ad litem stated that in her opinion, Ronald was not a descendant of Joel, the anti-lapse statute and Estates Code dispose of Ronald's share into the residuary, and Karen is the owner of the Disputed Funds.

The trial court took judicial notice of its file with the understanding that it can only take judicial notice of filings and adjudicative facts. The trial court admitted as

16

evidence the business records declaration of Tanya Randles, Joel's Will, the Muniment Order, and the second business records declaration of Tanya Randles.

After Evan Moeller, an equity partner for the law firm representing Bank of America, testified about attorneys' fees, counsel for Karen moved for directed verdict. Karen's counsel argued that Bank of America failed to establish: (1) that rival claims existed; and (2) that there was a reasonable doubt in law or fact as to which claim is valid. In response, Bank of America argued that it was reasonable to file the interpleader claim if it reasonably anticipated rival claims to the same funds. Counsel further urged that the consideration should be at the time of the filing. Bank of America asserted that before the filing, Karen requested that all the Disputed Funds be distributed to her account, and Joel's Will did not devise a specific amount to her. It also argued that the Muniment Order and other documentary evidence made no findings about whether any predeceased beneficiaries had heirs. According to Bank of America, the evidence exceeds what is necessary to survive a directed verdict and supports its entitlement to interpleader relief. In response, counsel for Karen continued to argue that Bank of America had no evidence to believe or anticipate rival claims at the time it filed the interpleader petition, and the directed verdict should be granted as a matter of law.

Counsel for Karen then called the attorney ad litem, Olympia Sacaciu, to testify. Sacaciu testified that in her research Ronald did not have any biological or

17

adopted children and was never married. She believed that Karen is entitled to the Disputed Funds. On cross-examination, Sacaciu testified that she did not get involved in the case until after the interpleader was filed, and her investigation began after she was appointed.

Next, Karen testified and stated that Joel, her husband, passed away on March 4, 2023. She explained that all the specific gifts made in Joel's Will were paid except for two, which was the gift to his mother who passed in 2003, and the gift to his brother Ronald who passed in 2013. Karen testified that Ronald was five years older than Joel, and during the time she knew Ronald, he did not have a wife or kids. Karen acknowledged that under Joel's Will, she is the beneficiary of the remainder of his estate, other than the specific gifts. On cross-examination, Karen testified that she refused to sign a distribution agreement as requested by Bank of America.

On October 23, 2023, the trial court signed an Order denying Bank of America's request for interpleader. The next day, Karen filed her Motion for No-Evidence and Traditional Partial Summary Judgment on her Declaratory Judgment Claim. In the Motion, Karen pleaded for the following declarations:

a.  that the bequest to Ella May Townsend in Joel's Will terminated when Ella May Townsend predeceased Joel;

b.  that the bequest to Ronald in Joel's Will became part of Joel's residuary estate pursuant to Texas Estates Code, sections 255.152(a) and 255.153(a);

18

c. that the residuary of Joel's estate passes to Karen; and

d. that the Disputed Funds titled to Joel belong to Karen.

Karen argued that Bank of America has no evidence that Ronald A. Brunner left any descendants and no evidence that anyone other than Karen owns the Disputed Funds. Karen also moved for traditional summary judgment providing that all specific bequests were paid except those to Ella May Townsend, whose specific bequest terminated under the terms of the Will, and Ronald, whose specific bequest became part of the residuary of Joel's estate, that the residuary of Joel's estate passes to Karen, and that the Disputed Funds belong to Karen. Karen argued there is no genuine issue of material fact about the requested declarations.

Attached as exhibits are Joel's Last Will and Testament, Order Admitting Will to Probate as Muniment of Title, Karen's Affidavit, Unsworn Declaration of John Denton and Keith McAfee, Report of Attorney Ad Litem, Order denying interpleader relief, Declaration of Tanya L. Randles, Joel's Account Profile, Decree Admitting Ella May Townsend's Will to Probate, Karen's Answer, Claim for Declaratory Judgment and Motion for Traditional Summary Judgment, and Application for Probate of Will as a Muniment of Title.

Bank of America filed its Response to Defendant's Motion for No-Evidence and Traditional Partial Summary Judgment on her Declaratory Judgment Claim and argued that Karen's counterclaim under the Uniform Declaratory Judgments Act is

19

not the proper use of the Act to prove her entitlement to summary judgment. According to Bank of America, an interpleader, not a declaratory judgment, is the proper way to determine the ownership of the property at issue and only seeks to determine ownership rights, which is already at issue by the interpleader petition. Bank of America further argued that Karen's counterclaim is barred by the mirror image rule and she is using the declaratory action to recover otherwise unrecoverable attorneys' fees. Further, Karen, not Bank of America, bears the burden to prove ultimate ownership, and she cannot do so with a no-evidence motion for summary judgment.

That same day, Bank of America filed its Answer and Special Exceptions to Karen's Cross Claim for Declaratory Judgment and generally denied the allegations and specially excepted to her entire Cross Claim for Declaratory Judgment because it failed to state a viable claim under the Uniform Declaratory Judgments Act. Bank of America also asked the trial court to award reasonable and necessary attorneys' fees.

Karen filed her Reply in Support of her Motions for Summary Judgment on her Declaratory Judgment Claim. She argued Bank of America did not provide evidence of another owner of the Disputed Funds and failed to disprove any element of her declaratory judgment claims. Karen contended that because the interpleader

20

was denied, there is no pending suit to determine the ownership of the Disputed Funds; therefore, her request for declaratory relief is proper.

On November 16, 2023, the trial court signed an Order on Karen's Motion for Partial Summary Judgment and made the following declarations: (1) the specific bequest to Ella May Townsend set forth in Decedent Joel Brunner's will terminated under its own terms because Ella May Townsend predeceased Joel Brunner; (2) the specific bequest to Ronald A. Brunner became a part of the residuary of the estate of Joel Brunner pursuant to Texas Estates Code, section 255.153(a) and 255.152(a); (3) under Joel Brunner's will, the residuary of his estate passes to Karen A. Brunner; and (4) the funds held by Bank of America titled in Joel Brunner's name belong to Karen A. Brunner. The Order stated that recovery of Karen's reasonable and necessary attorneys' fees under the Declaratory Judgment Act remained pending.

Bank of America then filed its Motion for Reconsideration of Order Denying Interpleader Relief and argued that Karen only presented the bank with Joel's Will and the Muniment Order, which did not provide the necessary information to determine the residuary's value. Bank of America argued that it properly sought to interplead the Disputed Funds because it reasonably anticipated rival claims when Karen refused to execute a distribution agreement that would hold her accountable if her representations were inaccurate. Bank of America further argued that Karen's declaratory judgment action judicially admits that Bank of America was reasonable

21

to question her right to the Disputed Funds. Additionally, Bank of America contended that it provided sufficient evidence that it incurred significant attorneys' fees because of Karen's strategy and requested the court award the amount requested. Bank of America attached the transcript from the October 19, 2023, evidentiary hearing to its motion.

Bank of America later filed its Combined Response to Karen's Objection to Submission Hearing and Reply in Support of its Special Exceptions. In the filing, Bank of America argued that the court should consider its special exceptions on November 16, and that the denial of interpleader relief does not validate Karen's declaratory judgment counterclaim as it did not present any new controversies and was used to recover attorneys' fees. On November 20, 2023, the trial court signed an Order Overruling Bank of America's Special Exception to Karen's Declaratory Judgment Act claim.

Karen then filed her Response to Bank of America's Motion for Reconsideration of the Court's Order Denying Interpleader. In the Response, Karen argued that the trial court should deny Bank of America's request since it failed to meet its burden of proof for interpleader by establishing (1) that it was facing rival claims for the Disputed Funds and (2) that reasonable doubt existed in law or fact as to which claim was valid. Karen further argued that her Declaratory Judgments Act claim is not a judicial admission that Bank of America was reasonable in questioning

her right to the Disputed Funds. Rather, it only shows that Bank of America failed to give her the Disputed Funds, and she brought legal action to do so.

Bank of America then filed its Reply in Support of its Motion for Reconsideration of Order Denying Interpleader Relief and argued that it only had to show that reasonable grounds existed to anticipate rival claims and that Karen is the sole cause of the interpleader action by failing to obtain declarations in the probate proceedings to establish Joel's residuary estate.

On November 30, 2023, the trial court signed an Order Denying Bank of America's Motion for Reconsideration of the Denial of its Interpleader Claim.

On February 15, 2024, a trial was held on Karen's attorneys' fees. Counsel for Karen testified that he has practiced law for twenty-nine years and his rates are customarily charged in Montgomery County for suits involving declaratory judgments and actions related to wills and assets of the decedent. Karen prevailed in her request for declaratory relief, and counsel testified that the court could award reasonable and necessary fees as is equitable and just.

On the same day as the trial, Bank of America filed its Bench Brief on Attorneys' Fees. In the brief, Bank of America argued that the work attributed to Karen's declaratory judgment counterclaim was unnecessary, as the counterclaim was entirely unneeded. Bank of America urged the trial court to find that equity

23

weighed against awarding Karen attorneys' fees since Karen chose not to incorporate declaratory relief into the muniment order.

On February 23, 2024, the trial court signed its Final Judgment. The Final Judgment incorporated the Order denying Bank of America's interpleader and the Order granting Karen's summary judgment on the substance of her declaratory judgment claim by reference. The sole remaining claim for trial was the recovery of attorneys' fees under the Uniform Declaratory Judgments Act, and the trial court found it was equitable and just to award Karen her reasonable and necessary attorneys' fees, and it would not be equitable or just to award Bank of America's fees against Karen. The trial court also found that it was equitable and just that Karen recovers her costs of court from Bank of America and awarded $6,867.50 in reasonable and necessary attorneys' fees plus 8.5% post-judgment interest annually from the date of judgment until fully paid. The trial court further awarded attorneys' fees in the event of appeal with post-judgment interest.

This appeal followed.

On appeal, Bank of America challenges the denial of its interpleader and the granting of Karen's summary judgment. Bank of America argues that it reasonably anticipated rival claims to the Disputed Funds when Karen refused to provide adequate assurance that the gift to Ronald had lapsed, and Karen's counterclaim for declaratory judgment seeking the Disputed Funds was barred by the mirror-image

24

rule as an effort to recover attorneys' fees. Finally, Bank of America challenges Karen's award of attorneys' fees.

## Standard of Review

We utilize an abuse of discretion standard of review of a trial court's ruling on an interpleader action. *See Bryant v. United Shortline Inc. Assurance Servs.*, 972 S.W.2d 26, 31 (Tex. 1998). When presented with conflicting claims to money it holds, a stakeholder may apply to a court for protection, because the stakeholder does not know which claimant to pay and fears exposure to multiple liabilities for the single stake. *See Clayton v. Mony Life Ins. Co. of Am.*, 284 S.W.3d 398, 401 (Tex. App.—Beaumont 2009, no pet.); *see also* Tex. R. Civ. P. 43. By placing the money in the court's control for the court to decide ownership in a proper interpleader, the stakeholder is relieved from potential liability to pay the single fund more than once, and from litigation costs attending the rival claims. *Clayton*, 284 S.W.3d at 401.

At common law a petitioner in interpleader had to prove that he: (1) was subject to, or has reasonable grounds to anticipate, rival claims to the same funds; (2) did not unreasonably delay filing the interpleader action; and (3) unconditionally tendered the funds into the registry of the trial court. *Fort Worth Trans. Auth. v. Rodriguez*, 547 S.W.3d 830, 850 (Tex. 2018); *Olmos v. Pecan Grove Mun. Utility Dist.*, 857 S.W.2d 734, 741 (Tex. App.—Houston [14th Dist.] 1993, no writ). That

25

said, we have previously explained, "Rule 43 expressly disclaims certain pre-rule restrictions imposed on interpleader practice. The Rule extended and liberalized the equitable remedy of interpleader. Interpleader under Rule 43 requires only conflicting claims." *Clayton*, 284 S.W.3d at 402 (internal quotations omitted) (citing Tex. R. Civ. P. 43; *State Farm Life Ins. Co. v. Martinez*, 216 S.W.3d 799, 806–07 (Tex. 2007)) (other citation omitted). Delay or failure to unconditionally tender the funds may implicate the interpleader's right to attorney's fees, but not its right to interplead the funds. *See Martinez*, 216 S.W.3d at 807 ("Thus while delay may bar recovery of attorney's fees and incur the statutory penalties, only the absence of rival claims justifies continuing statutory penalties after interpleader occurs."). Under Rule 43, to interplead the funds into the court's registry, all the disinterested stakeholder must show is that it was subject to or reasonably anticipated rival claims. *See* Tex. R. Civ. P. 43; *Fort Worth Trans. Auth.*, 547 S.W.3d at 850. Courts must consider the circumstances at the time the interpleader petition is filed. *Fort Worth Trans. Auth.*, 547 S.W.3d at 850 (discussing in the context of jurisdiction). "[E]very reasonable doubt should be resolved in favor of the stakeholder's right to interplead." *Bryant*, 972 S.W.2d at 31 (citation omitted).

Generally, an interpleader involves two stages. *Clayton*, 284 S.W.3d at 402 (citations omitted). "In the first stage, the court determines whether interpleader is

26

appropriate." *Id.* If the interpleader is determined to be appropriate, the second stage involves the rival claimants litigating their differences. *Id.*

**Analysis**

Here, both Bank of America and Karen agree that whether Bank of America had reasonable grounds to anticipate rival claims to the same funds, is at issue. Bank of America bore the burden of proof to establish that it had reasonable grounds to anticipate rival claims. *Olmos*, 857 S.W.2d at 741. We consider the circumstances at the time Bank of America filed its interpleader petition. *Fort Worth Trans. Auth.*, 547 S.W.3d at 850.

With its interpleader, filed on August 17, 2023, Bank of America provided several pieces of evidence including the Declaration of Tanya L. Randles, Joel's Boss-Checking Profile, Bank of America's Deposit Agreement and Disclosures, Joel's Will, Order Admitting Will to Probate as Muniment of Title, emails between counsel for Bank of America and Karen's counsel, Decree admitting Ella May Townsend's Will to Probate, and the Declaration of Cassandra Walsh. The interpleader states that Joel died on March 4, 2023, and Joel's Will is dated August 17, 1994. The documents submitted reveal that correspondence between counsel for Bank of America and Karen began in June 2023. In an email dated June 26, 2023, counsel for Bank of America requests confirmation from Karen's counsel that the following eight bequests listed in Joel's Will were satisfied:

27

1. All of [Joel]'s debts have been paid;
2. $5,000 was paid from the Estate to [Joel]'s brother, Ronald A. Brunner;
3. $1,000 was paid from the Estate to [Joel]'s sister, Bambi Pesce;
4. $1,000 was paid from the Estate to [Joel]'s nephew, Walter H. Peters, III;
5. $1,000 was paid from the Estate to [Joel]'s niece, Hea[]ther L. Maybee;
6. $1,000 was paid from the Estate to [Joel]'s nephew, Roderick M. Maybee, IV;
7. $1,000 was paid from the Estate to [Joel]'s niece, Rachel B. Pesce; and
8. [Joel]'s mother, Ella May Townsend, predeceased [Joel] and, thus, the specific bequest to Ella May Townsend is satisfied.

Karen's counsel confirms that the bequests were satisfied, to which counsel for Bank of America responds that he will be in touch once the account is cleared.

On June 26, 2026, counsel for Bank of America requested a copy of Ella May Townsend's death certificate. In a response that included Karen, Karen's counsel provided a link to Joel's online obituary that references that Ella May Townsend predeceased Joel, and asked Karen if she had a copy of Ella May Townsend's death certificate. That same day, Karen replied only to her counsel and stated she did not have a copy of Ella May Townsend's death certificate, that Ronald handled Ella May Townsend's estate matters, and that Ronald passed away in 2013. Karen's counsel replied and included counsel for Bank America and asked if the obituary along with Karen's statement would suffice. Karen replied with a link of Ella May Townsend's probate record on file with the Harris County Clerk.

28

On June 30, 2023, counsel for Bank of America provided an update that stated Ella May Townsend's probate records were not available through the website, the records were ordered, and requested they provide any documents Karen may have. Karen's counsel responded that seeing the filing on the website should be enough to prove that Ella May Townsend predeceased Joel.

On July 7, 2023, Karen's counsel followed up with an email stating that seeing the filing online should suffice to show that Ella May Townsend predeceased Joel, stated that he did not know why Bank of America would not immediately comply with the Court's order and provide the assets to Karen, and inquired as to what Karen needed to do to collect the Disputed Funds. Counsel for Bank of America advised that they were awaiting the probate documents.

On July 21, 2023, counsel for Bank of America informed Karen's counsel that Ella May Townsend's probate records were received, and again asked for confirmation that the above-mentioned eight bequests were satisfied and confirmation that the Disputed Funds were payable to Karen according to the Will and the terms of the Order Admitting Will to Probate as Muniment of Title. That same day, Karen's counsel responded, "Actually – reading more closely – Ronald Brunner died in 2013 (predeceasing [Joel])."

On July 31, 2023, Karen's counsel requested an update from Bank of America, and on August 7, 2023, Karen emailed counsel for Bank of America. She

noted the previous confirmation and stated the Ronald passed away penniless in 2013, she did not have his death certificate, and he died intestate. Karen added that she and Joel paid for Ronald's funeral; therefore, she believed bequest was technically honored. That same day, counsel for Bank of America inquired if Ronald left any descendants at the time of his passing to which Karen responded that Ronald never married and had no children. Karen then asked why Bank of America asked about Ronald's descendants.

Later that evening, Karen's counsel informed Karen that Bank of America was likely inquiring as to Ronald's descendants to determine whether the anti-lapse statute applied, and since Ronald predeceased Joel without descendants, Ronald's gift lapses and passes under the residuary provision to Karen. Karen's counsel then asked Bank of America when it would comply with the Muniment Order and give Karen the Disputed Funds.

Also included with Bank of America's interpleader, is the Declaration of Cassandra Walsh, counsel for Bank of America. Walsh stated that on August 9, 2023, she spoke with Karen's counsel and proposed a Distribution, Release, and Indemnity Agreement. The Declaration stated that the agreement would (1) provide assurances that the representations made by Karen and her counsel regarding satisfaction of the bequests and that Ronald A. Brunner died in 2013 with no descendants, and (2) facilitate distribution of the Disputed Funds. The Declaration

30

stated that Karen's counsel confirmed that Karen would not execute such an agreement.

In the interpleader, Bank of America stated that because of Karen's rejection of the Distribution, Release, and Indemnity Agreement, it reasonably anticipated rival claims to the Disputed Funds and filed suit.

"Under Rule 43, the innocent stakeholder needs only show that he is or he may be exposed to double or multiple liability as a result of conflicting claims justifying a reasonable doubt as to which claimant is entitled to the funds." *Allstate Ins. v. Felts*, No. 09-92-00239-CV, 1993 WL 367053, at *3 (Tex. App.—Beaumont Sept. 16, 1993, writ denied) (mem. op., not designated for publication). It is clear that Bank of America was concerned about a descendant of Ronald bringing a claim for the bequest made to him in Joel's Will. Karen provided contradictory information when she initially confirmed that all bequests, including the bequest to Ronald, were satisfied, but later stated that Ronald predeceased Joel. It was only after the discussion regarding Ella May Townsend's estate that Karen informed Bank of America that Ronald also predeceased Joel, but she could provide no documentation of his estate or descendants. Karen also refused to execute a Distribution, Release, and Indemnity Agreement that Ronald died with no descendants. Although Karen included a self-serving affidavit, dated August 23, 2023, in which she swore that Ronald died without a will and descendants, the affidavit was included with Karen's

31

answer and executed after Bank of America filed its interpleader on August 17, 2023. This is also true for the supporting declarations of Denton and McAfee. Therefore, considering the evidence provided at the time Bank of America filed its interpleader and resolving every reasonable doubt in favor of its right to interplead, we hold that it was reasonable for Bank of America to anticipate rival claims as to the Disputed Funds, and the trial court abused its discretion by denying Bank of America's request for interpleader. *See Fort Worth Trans. Auth.*, 547 S.W.3d at 850; *Bryant*, 972 S.W.2d at 31.

We sustain Bank of America's first issue.

Next, Bank of America argues that Karen's counterclaim for declaratory judgment is barred by the mirror-image rule and having sustained Bank of America's first issue, we agree.

In her request for declaratory relief, Karen requested the following declarations under Texas Civil Practice and Remedies Code section 37.005:

1. that the specific bequest to Ella May Townsend terminated under Joel Brunner's Will when Ella May Townsend predeceased Joel Brunner;

2. that the specific bequest to Ronald Brunner became part of the residuary of the estate of Joel Brunner pursuant to Texas Estates Code, sections 255.153(a) and 255.152(a);

32

3. that the residuary of the estate of Joel Brunner passes to Karen A. Brunner; and

4. that the funds in the hand of Bank of America titled in Joel Brunner's name belong to Karen Brunner. The trial court granted Karen's requests and made the declarations requested in an Order dated November 16, 2023.

Karen's counterclaim with a request for declarations included the same subject-matter before the trial court through Bank of America's interpleader and sought to be determined in the second phase of the interpleader. *See Clayton*, 284 S.W.3d at 402 (citations omitted) (explaining that interpleader is decided in two phases, the first phase determines if interpleader is appropriate and the second phase determines the rightful claimant). Bank of America put the rightful claimant and proper distribution of the Disputed Funds at issue through its interpleader and therefore, Karen's counterclaim seeking declaratory relief was improper. *See Koch Oil Co. v. Wilber*, 895 S.W.2d 854, 866 (Tex. App.—Beaumont 1995, writ denied) (citing *John Chezik Buick v. Friendly Chevrolet*, 749 S.W.2d 591, 594–95 (Tex. App.—Dallas 1988, writ denied) (explaining that a declaratory judgment is not available to issues in a pending suit that present no new controversies)). Thus, we sustain Bank of America's second issue.

In its third issue, Bank of America challenges Karen's award of attorneys' fees under the Uniform Declaratory Judgments Act. Having sustained Bank of America's challenge to Karen's counterclaim for declaratory judgment and determined that Karen's counterclaim seeking declaratory relief was improper, we further hold that Karen is therefore not entitled to attorneys' fees under the Uniform Declaratory Judgments Act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (authorizing costs and attorney's fees in any proceeding under Chapter 37). Therefore, we sustain Bank of America's third issue.[4]

## Conclusion

In conclusion, having determined that the trial court abused its discretion in denying Bank of America's interpleader, we reverse the Final Judgment of the trial court. We further reverse the trial court's Order granting Karen's counterclaim for Declaratory Judgment Motion for Summary Judgment and award of attorneys' fees. We remand to the trial court for an Order granting the interpleader, ordering the Disputed Funds be deposited into the registry of the court, discharging Bank of

---

[4]In its fourth and final issue, Bank of America waived its right to attorneys' fees as an interpleader plaintiff. *See Fort Worth Transp. Auth. v. Rodriguez*, 547 S.W.3d 830, 850 (Tex. 2018) (explaining that an innocent stakeholder is entitled to attorneys' fees to be paid out of the interpleaded funds). We therefore do not address Bank of America's right to attorneys' fees.

34

America from the suit, and dismissing with prejudice Karen's counterclaim against Bank of America under the Uniform Declaratory Judgments Act.

REVERSED AND REMANDED.

W. SCOTT GOLEMON
Chief Justice

Submitted on October 23, 2025
Opinion Delivered May 14, 2026

Before Golemon, C.J., Wright and Chambers, JJ.